**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AARON X. SMITH,** *Plaintiff,* | : | **CIVIL ACTION** |
| | : | **NO. 25-3082** |
| **v.** | : | |
| **TEMPLE UNIVERSITY,** *Defendant.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J. AUGUST 10, 2026

**MEMORANDUM OPINION**

**INTRODUCTION**

Plaintiff Aaron X. Smith, ("Plaintiff"), filed this employment discrimination action against Defendant Temple University, ("Temple" or "Defendant"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq*., ("PHRA"), and the Philadelphia Fair Practices Ordinance, Philadelphia, Pa. Code § 9-1101, *et seq*., ("PFPO"). In the complaint, Plaintiff avers that he was discriminated against based on his race, suffered a hostile work environment, and was retaliated against for complaining about this treatment.

Presently, before this Court is Defendant's motion to dismiss Plaintiff's complaint filed pursuant to Federal Rule of Civil Procedure, ("Rule"), 12(b)(6) on procedural and substantive grounds, (ECF 7), Plaintiff's response in opposition or, alternatively, his request for leave to amend his complaint pursuant to Rule 15(a), (ECF 9), and Defendant's reply in support of its motion to dismiss and its reply to Plaintiff's motion to amend, (ECF 10). For the reasons set forth herein, Defendant's motion to dismiss is granted, *in part*, and Plaintiff's cross-motion for leave to amend is granted.

**BACKGROUND**

When ruling on a defendant's motion to dismiss, this Court accepts, as true, all well-pled factual allegations in the complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Briefly, the facts alleged relevant to Defendant's motion to dismiss are as follows:

> In 2018, Plaintiff, an African American male, was hired by Defendant as a tenure track professor to teach in the Department of Africology and African American Studies, (the "Department"), within the College of Liberal Arts. (ECF 1 at ¶ 18). Plaintiff contends that on February 9, 2022, his contract was renewed for two additional years commencing on July 1, 2022 through June 30, 2024, with publishing and scholarship conditions not normally required for tenure review and not required of any non-African American tenure track professor who was given a renewal contract. (*Id.* at ¶¶ 21-22).
>
> Though Plaintiff reported to the Chair of the Department, final control over his employment decisions rested at all times with Richard Deeg, Dean of the College of Liberal Arts, ("Dean Deeg"). (*Id.* at ¶ 20). When Plaintiff began his employment, Dr. Molefi Asante was the Department Chair. (*Id.* at ¶ 19). However, in the Summer/Fall 2022, Dr. Ama Mazama was promoted to the position. (*Id.* at ¶ 23). Plaintiff avers that, during her first week as chair, Dr. Mazama removed Plaintiff and all other African American men from their positions overseeing special programs for undergraduate and graduate students. (*Id.* at ¶ 24). Plaintiff complained to the College of Liberal Arts that the actions taken by Dr. Mazama and supported by Dean Deeg were discriminatory. (*Id.* at ¶ 25). At Temple's direction, Plaintiff's complaints were investigated by an independent law firm. (*Id.* at ¶ 26).
>
> In the interim, on February 16, 2023, Plaintiff was notified that an Inquiry Committee would be formed to investigate allegations of academic dishonesty and misconduct made against him related to an article that he submitted to a journal. (*Id.* at ¶¶ 31, 35). The article was made available only to Dr. Mazama and was withdrawn prior to any peer-review. (*Id.*). That same month, Dean Deeg, on Dr. Mazama's recommendation, elected against renewing Plaintiff's contract for reasons unrelated to conditions within Plaintiff's existing contract, and despite the Department's recommendation to the contrary, (*id.* at ¶ 37).
>
> On July 26, 2023, the outside law firm, hired by Temple to investigate Plaintiff's discrimination complaints against the College of Liberal Arts, rendered a report finding no discrimination. (*Id.* at ¶ 29). According to Plaintiff, the investigation was erroneously limited to the Department instead of the broader College of Liberal Arts under Dean Deeg's leadership. (*Id.* at ¶ 27). Plaintiff avers that, although Dean Deeg was thereafter instructed not to retaliate against him because some of Plaintiff's allegations concerned Dean Deeg, nevertheless Dean Deeg issued a notice in October 2023 indicating his intent to reprimand Plaintiff. (*Id.* at ¶¶ 28, 30).

On May 4, 2024, Plaintiff became aware that the Inquiry Committee found, by report finalized in August 2023, no academic dishonesty or misconduct attributed to him, as a result of their investigation of him. (*Id.* at ¶ 33). Even though Plaintiff endeavored to obtain information about the investigation for months, he was not notified until May 2024. (*Id*. at ¶¶ 33-34). Plaintiff alleges that no non-African American tenure track professor in the College of Liberal Arts faced comparable accusations or scrutiny during the tenure process, but this allegation is not verified by any investigation. (*Id.* at ¶ 36).

On October 17, 2024, Plaintiff received an email from Dean Deeg notifying him, without any justification, that he would not be assigned to teach any classes the following semester. (*Id.* at ¶¶ 38-39). At some point that month, Plaintiff requested an external investigation to determine if any similarly situated individuals of a different race experienced the same adverse action. (*Id.* at ¶ 42). The investigation again found no discrimination but was again limited to the Department instead of the College of Liberal Arts. (*Id.* at ¶¶ 43-44). Plaintiff further avers that no non-African American tenure track professor was given notice without reason that they would not be permitted to teach any courses during the semester. (*Id.* at ¶ 42). Plaintiff avers that it can be inferred that Temple failed to provide the investigators with the relevant information pertaining to his allegations of discrimination against him. (*Id.* at ¶ 45).

On March 7, 2025, Plaintiff dual-filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission, ("EEOC"), and the Philadelphia Commission on Human Relations, ("Phila.CHR"). (*See* Ex. 1, ECF 1-1). On March 19, 2025, he received a right-to-sue letter. (*See* Ex. 2, ECF 1-1). On June 17, 2025, Plaintiff filed a complaint in this Court averring claims of discrimination, retaliation, and hostile work environment. (ECF 1).

**LEGAL STANDARD**

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court "must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (internal quotation marks and citations omitted). "[W]here the well-pleaded facts do not permit

the court to infer more than the mere possibility of misconduct the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge his or her claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

As noted, Plaintiff avers the following claims against Temple; *to wit*: (1) discrimination, retaliation, and hostile work environment pursuant to Title VII (Count I); (2) discrimination, retaliation, and hostile work environment pursuant to the PHRA (Count II); and (3) discrimination, retaliation, and hostile work environment pursuant to the PFPO (Count III). In its motion to dismiss, Temple argues that Plaintiff's claims are time-barred, unexhausted, and fail to state a claim upon which relief can be granted. Plaintiff disagrees, and, in the alternative, moves for leave to file an amended complaint. Each argument is addressed in turn.

***I. Defendant's Motion to Dismiss***

***a. Statute of Limitations for Plaintiff's Claims***

Claims under Title VII, the PHRA, and the PFPO must satisfy "timing requirements." *Vandegrift v. City of Phila.*, 228 F. Supp. 3d 464, 483 (E.D. Pa. 2017). Specifically, to bring a Title VII lawsuit in Pennsylvania, a plaintiff must file a complaint with the EEOC "within 300 days of the alleged unlawful employment practice." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157,

165 (3d Cir. 2013) (citing 42 U.S.C. § 2000e-5(e)(1)). Additionally, "[t]o bring suit under the PHRA, an administrative complaint must first be filed . . . within 180 days of the alleged act of discrimination." *Id.* at 164 (citing 43 Pa. Cons. Stat. § 959(h)). Likewise, an administrative complaint under the PFPO must be "filed within 300 days of the unlawful practice." *Vandegrift*, 228 F. Supp. 3d at 481 (citing Philadelphia, Pa. Code § 9-1112(3)).

However, "[t]he continuing violations doctrine is an equitable exception to the timely filing requirement." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (citation modified). The doctrine requires a plaintiff to "show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Mandel*, 706 F.3d at 165-66. It "does not apply to discrete discriminatory or retaliatory acts . . . ." *Payne v. Cty. of Del.*, 2025 WL 2969120, at *6 (E.D. Pa. Oct. 17, 2025). "'[D]iscrete acts' are acts that are 'individually actionable,' including failure to promote, wrongful suspension, wrongful discipline, and denial of training." *Booker v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 575, 585 (E.D. Pa. 2012) (alteration in original) (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)).

Here, Defendant argues that many of the discrete events of discrimination alleged in the complaint fall outside either applicable administrative complaint filing window and are, thus, time-barred. This Court agrees. As noted, Plaintiff filed his administrative complaint on March 7, 2025, and this action on June 17, 2025. Accordingly, any events that occurred prior to May 11, 2024 (for Title VII and PFPO claims) and/or September 8, 2024 (for PHRA claims) are necessarily barred. Because some of the alleged incident occurred before these dates, some of Plaintiff's claims are not actionable. Thus, Plaintiff's claims are time-barred under all three statutes with respect to the following events; *to wit*: Plaintiff's contract renewal with additional publishing and scholarship

conditions on February 9, 2022; Plaintiff's removal from a director position in Summer/Fall 2022; Defendant's decision not to renew Plaintiff's contract as a tenure track professor in February 2023; Dean Deeg's notice of his intent to reprimand Plaintiff in October 2023; and the investigation into Plaintiff's potential academic dishonesty and misconduct that began on February 16, 2023 and was finalized in August 2023.

Plaintiff's apparent attempt to invoke the continuing violations doctrine to overcome the timeliness issues with respect to his retaliation claims based on these now deemed untimely events is unpersuasive. All the untimely incidents alleged fall within categories that have been previously determined by the Third Circuit to be "discrete acts." *See Booker*, 880 F. Supp. 2d at 585 (noting that discrete acts include, *inter alia*, failure to promote, wrongful suspension, and wrongful discipline) (citation modified). Thus, the untimely incidents "cannot be aggregated under a continuing violations theory." *O'Connor*, 440 F.3d at 127.

Accordingly, Plaintiff's claims based on any of the aforementioned events are dismissed as time-barred under all three statutes.[1] However, Plaintiff's claims are timely with respect to the alleged incident of his removal from the Spring 2025 teaching schedule. Plaintiff avers he was notified of that decision on October 17, 2024, and he filed a related charge of discrimination 141 days later, on March 7, 2025. Thus, any of Plaintiff's Title VII, PHRA, PFPO claims based on his removal from the teaching schedule may proceed.

***b. Exhaustion of Plaintiff's Claims***

A plaintiff bringing a lawsuit under Title VII, the PHRA, and the PFPO "must exhaust all required administrative remedies before bringing a claim for judicial relief." *Mandel*, 706 F.3d at

---

[1] Notwithstanding this Court's ruling, Plaintiff is permitted to rely on these events as background evidence in support of his viable claims. *See Titus-Morris v. Banc of America Card Servicing Corp.*, 512 F. App'x 213, 217 (3d Cir. 2013) (noting prior acts that are time-barred "may still be cited as background evidence in support of a timely claim").

163; *see also Higgins v. MetLife Inc.*, 687 F. Supp. 3d 644, 650 (E.D. Pa. 2023). "[N]on-exhaustion constitutes a ground for dismissal for failure to state a claim on which relief may be granted" under Rule 12(b)(6). *Itiowe v. NBC Universal, Inc.*, 556 F. App'x 126, 128 (3d Cir. 2014) (citing *Anjelino v. New York Times Co.*, 200 F. 3d 73, 87 (3d Cir. 2000)).

***i. Title VII***

Exhaustion of a Title VII claim requires timely filing a charge of discrimination with the EEOC and procuring "a notice of the right to sue." *Mandel*, 706 F.3d 157 at 164. Here, Plaintiff dual-filed with the EEOC and the Phila.CHR on March 7, 2025, his discrimination complaint, (*see* ECF 1-1), received a right-to sue-letter from the EEOC on March 19, 2025, and filed this complaint on June 17, 2025, (ECF 1). Because Plaintiff timely filed a charge with the EEOC and received the EEOC right-to-sue letter prior to beginning this action, his Title VII claims are properly exhausted. Defendant's argument that the EEOC investigatory process failed to comply with statutory requirements based on the short time frame between Plaintiff's filing of a charge and his receipt of a right-to-sue letter in unpersuasive; the Court will not discredit the EEOC investigatory process based on dates alone.

***ii.* Pennsylvania Human Relations Act, "*PHRA*"**

"To bring suit under the PHRA, an administrative complaint must first be [timely] filed with the" Pennsylvania Human Relations Commission, ("Pa.HRC"). *Mandel*, 706 F.3d at 164. However, courts have held that a PHRA complainant may alternatively file with the Phila.CHR. *See Kedra v. Nazareth Hosp.*, 857 F. Supp. 430, 434 (E.D. Pa. July 7, 1994); *see also* 43 Pa. Stat. and Cons. Ann. § 962.1(e) (requiring the Phila.CHR to notify the Pa.HRC of any claim).[2]

[2] Courts also recognize an administrative filing with the EEOC as sufficient to begin exhaustion of a PHRA claim. *See Hudnell*, 537 F. Supp. 3d at 858.

Regardless, upon filing an administrative complaint, the Pa.HRC "has exclusive jurisdiction over the claim for one year." *Hudnell v. Thomas Jefferson Univ. Hosps., Inc.*, 537 F. Supp. 3d 852, 858 (E.D. Pa. 2020). On expiration of one year, a plaintiff may bring a PHRA claim in federal court without a letter from the investigating agency. *Id.*

Here, Plaintiff filed his discrimination charge with an appropriate agency claim – the Phila.CHR – to commence exhaustion of his PHRA but failed to wait one year prior to filing a complaint in this Court. Because the Pa.HRC was thus deprived of its one year of exclusive jurisdiction over Plaintiff's charge, Plaintiff's PHRA claim is dismissed, without prejudice.

***iii. Philadelphia Fair Practices Ordinance, "PFPO"***

As to the PFPO, its "plain text . . . does not include an administrative exhaustion requirement[.]" *Higgins*, 687 F. Supp. at 650. However, courts in this District have "concluded that PFPO claims must be administratively exhausted before a party may pursue such claims in court." *Id.* at 651 (collecting cases). A plaintiff may do so by filing an administrative charge "through either the [Phila.CHR] or the [Pa.HRC.]" *Richards v. Foulke Assocs.*, 151 F. Supp. 2d 610, 616 (E.D. Pa. 2001).[3] Like the PHRA, a plaintiff cannot bring a PFPO claim until one year after they filed their charge. *See* Philadelphia, Pa. Code § 9-1122(1).

Here, at the time the complaint was filed, the Phila.CHR had not acted on Plaintiff's charge and its year-long period to do so had not yet expired. Thus, Plaintiff's PFPO claim was not administratively exhausted prior to the complaint being filed. Accordingly, Plaintiff's PFPO claim is dismissed, without prejudice.

For the reasons set forth, this Court's analysis of Defendant's failure to state a claim argument is limited to Plaintiff's remaining Title VII claims.

---

[3] Again, courts recognize the availability of administrative exhaustion of a PFPO claim where a complainant administratively files with the EEOC. *See Higgins*, 687 F. Supp. 3d at 651.

### *c. Plaintiff's Alleged Failure to State a Claim Upon Which Relief Can Be Granted*

#### *i. Discrimination Claims under Title VII*

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . ." 42 U.S.C. § 2000(e)-2(a)(1). To establish a *prima facie* case of racial discrimination, "[a] plaintiff must show that: (1) [he] is a member of a protected class, (2) [he] was qualified for the position [he] sought to attain or retain, (3) [he] suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Branch v. Temple Univ.*, 554 F. Supp. 3d 642, 648-49 (E.D. Pa. 2021) (citation modified). For purposes of this motion to dismiss, only the fourth element is in dispute.

"An inference of discrimination can flow from either of two theories[:]" disparate impact or disparate treatment. *Purnell v. City of Phila.*, 2021 WL 3617161, at *5 (E.D. Pa. Aug. 16, 2021) (citing *Crumpton v. Potter*, 305 F. Supp. 2d 465, 472 (E.D. Pa. 2004)). Plaintiff appears to proceed under the latter, which requires a showing that his employer "treated [him] less favorably than similarly situated employees who were not in [his] protected class" by comparator evidence and establishing a "'causal nexus' between the alleged disparate treatment and [the adverse employment action]." *Johnson v. St. Luke's Hosp.*, 307 F. App'x 670, 672 (3d Cir. 2009). As such, "[t]o survive a motion to dismiss, '[the plaintiff] must allege facts sufficient to make plausible the existence of . . . similarly situated parties." *Wax v. Trustees of Univ. of Pa.*, 799 F. Supp. 3d 422, 432 (E.D. Pa. 2025) (alteration and omission in original) (quoting *Danao v. ABM Janitorial Servs.*, 142 F. Supp. 3d 363, 375 (E.D. Pa. 2015)). That is, the plaintiff must allege sufficient facts to plausibly show that the comparator parties were in nearly identical employment situations and were engaged in similar conduct. *Id.*

Here, Plaintiff avers conclusively that "[n]o non-African American tenure track professors within the College of Liberal Arts, was given notice without reason that they would not be permitted to teach any courses during the semester." (ECF 1 at ¶ 41). However, Plaintiff fails to aver specific facts about those non-African American proposed comparator tenure track professors. Absent any averments supporting a claim that any such unidentified parties are "similarly situated" to himself, Plaintiff has failed to plausibly allege an inference of discrimination as required for a *prima facie* case of racial discrimination. Therefore, Plaintiff's Title VII racial discrimination claims are dismissed. *See Purnell*, 2021 WL 3617161, at *6 (dismissing discrimination claim based on disparate treatment where the complaint failed to "include any facts that establish[ed] the unnamed comparators were similarly situated to" the plaintiff).

***ii. Retaliation Claims under Title VII***

To establish a *prima facie* case of retaliation, an employee must plead facts that tend to show "that (1) [he] engaged in a protected employment activity, (2) [his] employer took an adverse employment action after or contemporaneous with the protected activity, and (3) a 'causal link' exists between the adverse action and the protected activity." *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2017). The parties dispute whether Plaintiff has adequately pled facts to support elements one and three.

For purposes of retaliation, an "employee engages in a protected activity when he . . . opposes what an employee reasonably believes to be conduct that is unlawful under Title VII." *Jenkins v. Ciocca Mgmt., Inc.*, 762 F. Supp. 3d 416, 432 (E.D. Pa. 2025). Moreover, "[t]o establish the requisite causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Here, Plaintiff alleged that he engaged in protected activity in Summer/Fall 2022 and October 2024 when he complained of discrimination within the College of Liberal Arts after he was removed from his special position and notified on October 17, 2024 that he was not included in the Spring 2025 teaching schedule. *See Albright v. City of Philadelphia*, 399 F. Supp. 2d 575, 590 (E.D. Pa. 2005) ("Internal complaints about discriminatory practices are protected [activities]."). However, the Summer/Fall 2022 alleged protected activity is too attenuated from the alleged October 17, 2024 notice from Dean Deeg to serve as temporal evidence to support causation. Further, the October 2024 protected activity did not precede the supposed retaliatory action and, thus, cannot be said to have caused it. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation . . .").

Moreover, Plaintiff has not alleged sufficient facts to support a pattern of antagonism for causation purposes. The only antagonistic act alleged is Dean Deeg's notice in October 2023, indicating his intent to reprimand Plaintiff. However, "one act does not establish a pattern." *Hibbard v. Penn-Trafford Sch. Dist.*, 2014 WL 640253, at *19 (W.D. Pa. Feb. 19, 2014). Therefore, Plaintiff has failed to plead sufficient facts to plausibly show retaliation claims under Title VII. As such, his retaliation claims are dismissed.

***iii. Hostile Work Environment Claims under Title VII***

To establish a hostile work environment claim, Plaintiff must plead facts that tend to show that: "(1) he suffered intentional discrimination because of his race . . .; (2) the discrimination was severe and pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of *respondeat* superior liability." *Sanchez v. SunGard Availability Servs. LP*, 362 F.

App'x 283, 286 (3d Cir. 2010) (citing *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996)). Importantly, "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discrimination." *Syed v. YWCA of Hanover*, 906 F. Supp. 2d 345, 355 (M.D. Pa. 2012). Intentional discrimination may be shown by "evidence from which a reasonable factfinder could infer that the [alleged] incidents of [ ] harassment were motivated by animus towards" the plaintiff's race. *Id.*

Here, Plaintiff does not address Defendant's argument that the complaint fails to allege sufficient facts to plausibly show intentional racial discrimination. Upon review of the complaint, this Court identifies no such allegation. Nowhere in the complaint does Plaintiff connect the alleged adverse actions he experienced to a motivation of animus towards Plaintiff's race – except to aver that his non-African American peers were treated differently, which is not only insufficiently pled but would only go to an *inference* of discrimination (not intentional discrimination). *See Vu v. Kott*, 827 F. Supp. 3d 578, 588 (E.D. Pa. 2026) ("A plaintiff may establish an inference of discrimination by pointing to [*inter alia*,] comparator evidence. . .") (citation modified)). Further, Plaintiff's bare conclusions that Defendant's Title VII violations "were intentional and willful" are insufficient to support his claim. (*See, e.g.*, ECF 1 at ¶ 63); *see also Pulukchu v. Hadco Metall Trading Co.*, 2013 WL 4532740, at *1 (E.D. Pa. Aug. 26, 2013) (finding a plaintiff failed to state a Title VII claim where the complaint did "not contain anything more than conclusory allegations of discrimination"). Therefore, Plaintiff's hostile work environment claims is insufficiently pled under Title VII and are dismissed.

### *II. Plaintiff's Cross-Motion for Leave to Amend*

Plaintiff seeks leave to amend the complaint if Defendant's motion is granted. Pursuant to Rule 15(a), a party may amend its own pleading once as a matter of right within 21 days of serving such pleading or 21 days of service of a response pleading or motion under Rule

12(b). Fed. R. Civ. P. 15(a). Once the time for such amendment has lapsed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* In opposition to Plaintiff's motion, Defendant argues that Plaintiff's cross-motion is procedurally defective for want of a proposed amended complaint and, further, that any amendment would be futile because Plaintiff failed to provide any facts in his opposition briefing that would remedy the substantive deficiencies. Defendant also points out that Plaintiff could have filed an amended complaint as of right after Defendant's motion to dismiss was filed.

Though Defendant's arguments are well taken, Plaintiff does represent to this Court that he is able to remedy at least some of Defendant's noted and now found deficiencies. (*See, e.g.*, ECF 9 at p. 15) ("If Plaintiff is granted leave to amend his complaint, . . . he will provide . . . direct and circumstantial evidence support his claim of racial discriminatory evidence."). Because leave to amend is to be given "freely give[n] when justice so requires," Plaintiff is granted an opportunity to amend the complaint to address, if he can, the deficiencies noted herein. *See* Fed. R. Civ. P. 15(a)(2).

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is granted, without prejudice. Further, Plaintiff's cross-motion for leave to amend the complaint is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.